IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2004

## TONY JELKS, a/k/a TONIE JELKS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Haywood County**
**No. 4647     Clayburn Peeples, Judge**

---

### No. W2003-03076-CCA-R3-PC  - Filed July 19, 2004

---

The petitioner, Tony Jelks, pled guilty in the Haywood County Circuit Court to aggravated burglary and aggravated assault. He received a total effective sentence of ten years incarceration in the Tennessee Department of Correction. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that he received the ineffective assistance of counsel and that his pleas were not knowingly and voluntarily entered. The post-conviction court denied the petition, and the petitioner timely appealed. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

James S. Haywood, Jr., Brownsville, Tennessee, for the appellant, Tony Jelks.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Garry G. Brown, District Attorney General; and Gerald Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 14, 2001, the petitioner was indicted by the Haywood County Grand Jury on charges of aggravated burglary, theft under $500, aggravated assault, attempted aggravated rape, resisting arrest, and coercing a witness. On March 7, 2002, pursuant to a plea agreement, the petitioner pled guilty to aggravated burglary and aggravated assault. The remaining charges were dismissed. At the petitioner's guilty plea hearing, the State recited the following factual basis for the petitioner's pleas:

> Essentially, the allegations are that he went to the home of Ms.
> Sanchez, asked her for money and she closed the door and he came

in a window, again demanded money and ultimately when she refused, he got a couple of knives and threatened her and ordered her to take off her clothing, even threatened to cut it off of her if she didn't and he apparently took some of her jewelry and had it in his pockets when the police came. She had run in the bedroom and called the police and they responded in minutes and found him in the house.

The plea agreement provided that the appellant would be sentenced as a Range II multiple offender to ten years for each conviction and that he would be required to serve thirty-five percent (35%) of his sentence in confinement before becoming eligible for release.

Thereafter, the petitioner filed for post-conviction relief, alleging ineffective assistance of counsel and that his guilty pleas were not knowing and voluntary. At the post-conviction hearing, the petitioner testified that he was twenty-nine years old and had "dropped out" of school in the eighth grade. He maintained that counsel failed to advise him that his prior convictions could be used to enhance his sentence. The petitioner alleged that he first saw the State's Notice of Enhanced Punishment, which listed his previous convictions, while he was in the penitentiary following his guilty pleas. The petitioner complained that "[t]he only way [trial counsel] said my sentence was going to be enhanced, if I go to trial. She didn't say nothing about if I cop out they were going to enhance my punishment. That was the only way she was going to enhance my punishment, if I go to trial."

The petitioner asserted that when he pled guilty he believed he was being sentenced as a standard Range I offender and would therefore be eligible for release after serving thirty percent (30%) of his sentence. He admitted that the plea agreement reflected that he was designated as a multiple offender and that he would be required to serve at least thirty-five percent (35%) of his sentence in confinement. However, he averred that the range designation was not completed at the time he signed the document.

The petitioner conceded that he had previously pled guilty to "some felonies," but he could not recall the specific offenses. He admitted that he had at least two prior felony convictions. Additionally, the petitioner acknowledged that, at his guilty plea hearing, the trial court informed him that he was pleading guilty as a multiple offender and would not be eligible for release until he had served thirty-five percent (35%) of his sentence in confinement. However, the petitioner claimed that he "probably didn't understand" what he was being told.

The petitioner alleged that his counsel did not explain the details of his case or sentencing. Accordingly, he believed he was entitled to post-conviction relief. Specifically, the petitioner stated that he "would like to set aside my plea and try to get a standard offender Range I. If I have to go[] to trial, then we can."

Contrary to the petitioner's testimony, the petitioner's trial counsel testified that she discussed sentencing concerns with the petitioner many times. She explained that the plea negotiation process was a lengthy one, with the State making offers and the petitioner making counter-offers. In fact, counsel recalled that the petitioner offered to plead guilty to a sentence of eight years at thirty-five percent (35%), a sentence two years shorter than the sentence he ultimately received.

Counsel recalled that she and the petitioner discussed the State's Notice of Enhanced Punishment. The petitioner never denied the convictions listed on the notice. Counsel stated that the petitioner qualified as a Range II multiple offender and may have qualified as a Range III persistent offender. Moreover, counsel noted that she believed that the petitioner would have been convicted of multiple charges if he had proceeded to trial.

Counsel specifically stated that she explained to the petitioner that his guilty plea agreement provided that he was a multiple offender who would be required to serve thirty-five percent (35%) of his sentence in confinement before becoming eligible for release. Additionally, counsel stated that at the guilty plea hearing, the trial court informed the petitioner that he would be eligible for release after serving thirty-five percent (35%) of his sentence in confinement. Counsel noted that "he did not object to any of it whenever it was explained to him, and we had gone over it more than one time before he came to court." Counsel acknowledged that the petitioner's written plea agreement did not contain a provision warning the petitioner that the convictions could be used to enhance any sentences received for future convictions.

At the conclusion of the hearing, the post-conviction court determined that the petitioner had failed to prove that counsel was ineffective. Moreover, the court found that the petitioner's complaints of not understanding his sentence were "disingenuous, if not dishonest." The post-conviction court found that the trial court had fully and adequately explained the sentence to the petitioner. The post-conviction court acknowledged that the record reflected that the petitioner had not been informed that the two convictions in the instant case could be used to enhance any sentences received for future convictions. Regardless, the post-conviction court found that

> the [trial court] substantially complied with the requirements of notification, and I believe, in view of the totality of this record and the things that were said to him and the responses that he made, that he fully understood what he was doing and that his plea was voluntary and knowingly entered on the advice of a competent attorney.

On appeal, the petitioner challenges the judgment of the post-conviction court.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn.

Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

### 1. Ineffective Assistance

First, we will examine the petitioner's complaint that he received the ineffective assistance of counsel. A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

The petitioner's petition for post-conviction relief and his brief on appeal are unclear as to the specific basis for his ineffective assistance claim. From the testimony of his trial counsel, which was implicitly accredited by the post-conviction court, it is clear that counsel investigated the petitioner's case, met with the petitioner several times, explained to the petitioner the consequences of pleading guilty or proceeding to trial, and discussed sentencing with the petitioner. There is no indication that counsel failed to adequately represent the petitioner or that she inaccurately informed the petitioner regarding his plea agreement. Therefore, we agree with the trial court that the petitioner has failed to prove by clear and convincing evidence that he received the ineffective assistance of counsel.

### 2. Guilty Pleas

Next, we turn to the petitioner's complaints regarding the voluntariness of his guilty pleas. When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. See Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. See Boykin, 395 U.S. at 244, 89 S. Ct. at 1712.

In State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977), our supreme court set out the procedure trial courts should follow when accepting guilty pleas. Prior to accepting a guilty plea, the trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. See id.; Tenn. R. Crim. P. 11(c).

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The petitioner's complaints regarding his guilty pleas are two-fold. First, he complains that he was not informed that he would be sentenced as a multiple offender who would be required to serve a minimum of thirty-five percent (35%) of his sentence in confinement. Second, the petitioner asserts that he was unaware of all of the consequences of his plea, namely he was not informed that the instant convictions could be used to enhance any sentences he might receive for future convictions.

The post-conviction court determined that counsel informed the petitioner regarding his release eligibility. Moreover, the trial court warned the petitioner that he was pleading guilty as a multiple offender who would have to serve a minimum of thirty-five percent (35%) of his sentence in confinement. The petitioner voiced no complaint and willingly entered his guilty pleas. The evidence in the record does not preponderate against these findings.

Next, we turn to the petitioner's complaint that he was not cautioned that the instant convictions could be used to enhance future sentences. The post-conviction court found that the record reflected that the petitioner had not been warned of this consequence of entering guilty pleas. Our review of the record leads us to the same conclusion. However, appellate courts have repeatedly held that "the right to be informed of the possibility of subsequent enhancement is not of constitutional dimension. Its abridgement does not qualify as an adequate ground for post-conviction relief." Adkins v. State, 911 S.W.2d 334, 348 (Tenn. Crim. App. 1994); see also State v. Prince, 781 S.W.2d 846, 853 (Tenn. 1989); Sneed v. State, 942 S.W.2d 567, 568 (Tenn. Crim. App. 1996). Accordingly, the petitioner is not entitled to relief.

### III.  Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE